UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS  DIVISION

| | | |
|---|---|---|
| PETER A. PROSTYAKOV, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:1:05-cv-1430-SEB-VSS |
| | ) | |
| MASCO CORPORATION | ) | |
| and | ) | |
| RICHARD A. MANOOGIAN, | ) | |
| Defendants. | ) | |


**ENTRY GRANTING PLAINTIFF'S PETITION TO CONFIRM ARBITRATION
AWARD, DENYING DEFENDANTS' VERIFIED APPLICATION TO VACATE
ARBITRATION AWARD, GRANTING DEFENDANTS' MOTION TO DISMISS
MANOOGIAN AS AN IMPROPERLY NAMED PARTY, AND GRANTING
DEFENDANTS' MOTION TO STRIKE SURREPLY**

This case is before the Court on the Petition to Confirm Arbitration Award

[Docket No. 1] filed by Plaintiff, Peter A. Prostyakov ("Prostyakov").  Defendants,

Masco Corporation ("Masco") and Richard A. Manoogian ("Manoogian"), object to

Plaintiff's Petition, and file a Verified Application to Vacate the Arbitration Award

[Docket Nos. 15, 22].  Defendants also file a Motion to Strike Plaintiff's Surreply to their

Application to Vacate the Arbitration Award [Docket No. 40].  In addition, Defendants

file a Motion to Dismiss Richard Manoogian As An Improperly Named Party [Docket

No. 20].  For the reasons detailed in this entry, we GRANT Plaintiff's Petition to Confirm

Arbitration Award, DENY Defendants' Verified Application to Vacate Arbitration

Award, GRANT Defendants' Motion to Dismiss Manoogian As An Improperly Named

Party, and GRANT Defendants' Motion to Strike Surreply.

Factual Background

Masco is a publicly-held corporation, with its headquarters in Taylor, Michigan. Masco is engaged primarily in the manufacture of building products, cabinetry, and plumbing products. Defs.' Brief In Support of Objection to Motion to Confirm Arbitration Award and Verified Application to Vacate Arbitration Award [Docket No. 24] (hereinafter "Defs.' Brief") ¶ 1. Richard Manoogian serves as the Chairman of the Board of Directors and CEO of Masco Corporation. Id. ¶ 4.

In the early 1990s, Masco began operations in Russia, headed by Alex Kalbouss ("Kalbouss"). Id. ¶ 2. Prostyakov, Plaintiff in the instant case, was employed by Masco in Russia. On October 16, 1995, Prostyakov was appointed as managing director and agent of the Masco Representative Office. This appointment was pursuant to an Announcement issued by Manoogian. Id. ¶ 4.

Masco's employment relationship with Prostyakov was a troubled one. Over time, Masco "concluded that it could not trust Prostyakov and was dissatisfied with the performance of his duties."[1] Id. ¶ 5. Masco restricted Prostyakov's ability to bind Masco as its agent, and in April of 1996 placed him on temporary suspension. On April 12, 1996, Manoogian was formally removed, via an Announcement signed by Manoogian;[2]

---

[1] Masco alleges, *inter alia*, that it suspected Prostyakov had been stealing Masco inventory, and that he was involved in secret "side deals" with another company. Id. ¶ 5.

[2] The Announcement stated in part that "Masco ha[d] removed Peter Prostyakov as
(continued...)

on that same day, Yuri Lazutkin was appointed to Prostyakov's former position.  Id. ¶¶ 6, 7.

*The Settlement Agreement*

In the ensuing weeks, Masco and Prostyakov negotiated numerous issues regarding the parting of ways between them, and Prostyakov retained an Indiana attorney, Stephen Plopper, as his representative.  Id. ¶¶ 10, 11.  On June 18, 1996, the parties signed a Settlement Agreement and Release of Claims (the "Agreement") to resolve the issues between them.  As part of the agreement, Masco agreed to pay $8,853.38 to Prostyakov and $27,775.46 to St. George, Inc. (a company controlled by Prostyakov with which Masco had a consulting relationship).  Id. ¶¶ 12, 13.  In exchange, Prostyakov agreed to release Masco from all claims under the laws of any country – specifically including both the United States and Russia.[3]  Prostyakov also specifically agreed not to

---

[2](...continued)
managing director and agent of the Masco Representation Office."  Arbitration Award (hereinafter "Award") ¶ 20.

[3] Specifically, the Agreement stated that:

(a) In consideration of the settlement payment and the other obligations of this Agreement, Prostyakov and St. George release and forever discharge Masco, and those entities identified in Paragraph 1(b), including but not limited to, Masco Corporation of Indiana, Masco of Russia, Inc. their subsidiaries, divisions and affiliates, and all directors, officers, employees, agents, insurers, guarantors, attorneys and other representatives of Masco from all actual and potential claims, complaints, demands, causes of action, damages, costs, expenses, fees, and other liabilities of every sort and description, direct or indirect, fixed or contingent, known or unknown, suspected or unsuspected, and whether or not liquidated, including, without limitation, claims based upon pre-existing acts occurring at any time up to the date of this Agreement, which may result in future damages or injury

(continued...)

"institute, maintain, assist in or otherwise encourage any suit, action, administrative proceeding or other proceedings at law, in equity, or otherwise, against Masco, on account of claims released in this Agreement."  Agreement ¶ 5(a).  The Agreement stated that it was "[to] be construed in accordance with the laws of the State of Indiana."  Id. ¶ 5(i).

Further, the Agreement provided that any breach of the Agreement was to be privately arbitrated.  Specifically, the Agreement stated that:

---

[3](...continued)
(collectively, the "claims"), arising out of, caused by, or otherwise related in any way to:

(1) the dispute or relationship between Masco and Prostyakov and St. George, including any contractual relationship among them, employment or consulting relationship between them or any dispute arising out of any transactions, commitments, undertakings, understandings, communications or dealings between Masco and Prostyakov and St. George or concerning anything said about or done to any one of them by any other of them.

(2) violations or alleged violations of any federal or state statutes or common law (including, but not limited to, the laws of the United States or of any State, or the constitution of the United States or of any State), or of any contract or any other law, statute, ordinance, of Russia, Lithuania, Finland or any other country; and

(3) all claims which were raised or could have been raised in the dispute between Masco, Prostyakov and St. George. Prostyakov and St. George hereby expressly waive any and all legal or equitable remedies which may have been or are currently available to them thereunder including, but not limited to, any claim for attorney's fees. It is the intention of the parties that this Agreement be read as broadly as possible such that Masco shall have no further obligations or liability of any sort or nature to Prostyakov and St. George, directly or indirectly, except as otherwise provided herein.

Settlement Agreement (hereinafter "Agreement") ¶ 3(a).

All disputes, controversies or differences which may arise between the parties, out of, in relation to, or in connection with this Agreement or for the breach thereof, which cannot be settled by the parties themselves, shall be settled finally and bindingly by arbitration, to be held in the Indianapolis, Indiana metropolitan area. The commercial rules of the American Arbitration Association shall apply and shall govern the conduct of any such arbitration; however, any such arbitration shall be conducted privately by the parties and the Arbitrator shall be an attorney chosen by mutual agreement of the parties. If the parties cannot timely agree upon a single Arbitrator, each party shall designate one Arbitrator, and both of those Arbitrators shall pick a third, neutral Arbitrator. Such third neutral Arbitrator shall alone arbitrate the dispute. Any award or decision of the Arbitrators shall be deemed final, binding and enforceable through entry and enforcement in any court of competent jurisdiction, and the parties to this Agreement hereby agree to be subject to the jurisdiction of any such court. The costs and fees of such arbitration shall be paid by the losing party. The parties agree that the Federal Arbitration Act shall govern the interpretation and enforcement of this paragraph 6.[4]

In addition, and separately from the Agreement, Masco issued, at Prostyakov's request, an Organizational Announcement to be distributed throughout Masco's offices in Russia. Defs.' Brief ¶ 21. The Announcement stated that Prostyakov had "recently decided to seek other business opportunities" and that the parties had "been working the past couple of months to disengage from their previous business relationship." Id. ¶ 19.

*Prostyakov's Labor Book*

A Labor Book is a Russian document that details a person's employment history and is required under Russian law for all employees. Id. ¶ 26. An employer keeps the employee's Labor Book during the course of employment. When a period of

---

[4] Agreement ¶ 6.

employment ends, an employer must give the employee back his or her book, so the employee can give it to his or her next employer.  Id.

Upon the termination of Prostyakov's employment with Masco, his Labor Book was not returned to him because, Masco maintains, Prostyakov was in the United States negotiating the Settlement Agreement.  When Prostyakov returned to Russia, he sought the return of his Labor Book.  Id. ¶ 29.  Prostyakov claims that he formed an employment contract on July 9, 1996, with Federal Industrial Bank, which required him to give them his Labor Book.  He stated that if he could not obtain his Labor Book by August 26, 1996, he would submit a claim to a Russian court.[5]  Id. ¶¶ 30, 32.

Prostyakov had difficulty obtaining his Labor Book from Masco.  Masco maintains that "[t]he return of Prostyakov's Labor Book was delayed for various reasons, including conflict issues with Russian law firms."  He eventually did obtain it via delivery through a Russian law firm.  Id. ¶ 33.

The April 12, 1996 entry in Prostyakov's Labor Book states that he was "[d]ismissed by the decree of the Directors' Council of MASCO Corporation USA from Moscow Representation of MASCO Corporation USA."  Award ¶ 43; Defs.' Brief ¶ 34. Masco maintains that this entry "was consistent with Masco's decision to terminate its relationship with Prostyakov."  Defs.' Brief ¶ 35.  However, Prostyakov disputes the

---

[5] Masco characterizes Prostyakov as "threaten[ing] Masco with years of harassing litigation and adverse publicity, both in Russia and in the United States, if Masco refused to reinstate him to his original position and pay him in excess of $2,000,000."  Defs.' Objection to Prostyakov's Motion to Confirm Arbitration Award and Verified Application to Vacate Arbitration Award [Docket No. 22] (hereinafter "Defs.' Objection") at 3.

propriety of this entry under Russian law.[6]

Prostyakov's employment contract with Federal Industrial Bank was eventually canceled, at least in part because of problems regarding the timeliness of the submission of his Labor Book, and a lack of clarity regarding Masco's entry in the Labor Book.[7] Id. ¶ 44.

The Settlement Agreement does not mention Prostyakov's Labor Book, and Masco maintains that it was not considered by the parties in their settlement negotiations. Id. ¶ 27.

*Russian Litigation*

In September 1996, Prostyakov brought suit against Masco in Russia, seeking a declaration that his dismissal was unlawful, a reinstatement of his employment, and back pay. Id. ¶ 48. On April 14, 1997, a Russian court granted Prostyakov's claims; however, the judgment was eventually reversed. Id. ¶¶ 49, 50.

Thereafter, Prostyakov continued to pursue his legal claims in Russia, though Masco no longer participated in the legal proceedings, having closed its Representative

---

[6] Prostyakov, in the arbitration proceedings, called Dr. Alexander Kurrennoy as an expert witness about Russian law. Dr. Kurrennoy's testimony stated that the Labor Book entry was inappropriate because it did not provide a reason for dismissal, and was not recorded on the actual day of termination. Defs.' Brief ¶¶ 38-39. Dr. Kurrennoy's opinions were based on Russian law, and he did not claim to be an expert on Indiana law, nor did he claim any expertise as to the Settlement Agreement between the parties. Defs.' Brief ¶¶ 42-43.

[7] Masco maintains that at least part of the reason for this cancellation was that Prostyakov had misrepresented to Federal Industrial Bank his reasons for parting ways with Masco, and that the Labor Book entry accurately reflected that he had not, in fact, left of his own volition. Id. ¶ 45.

Office in Russia in 1998.  In March of 2002, Prostyakov obtained a court judgment in

Russia that his dismissal from Masco was unlawful, and that, therefore, his Labor Book

entry was incorrect.[8]  The court did not reinstate Prostyakov to employment with Masco,

nor did it award him any damages.  Id. ¶¶ 51-53.


### Arbitration Proceedings

In February 2003, Prostyakov instituted arbitration proceedings with the American

Arbitration Association ("AAA") in the United States against Masco based on Masco's

alleged breach of the Settlement Agreement between the Parties.  Award ¶ 1; Defs.'

Objection at 3.  Masco denied Prostyakov's claims and challenged the jurisdiction of the

AAA over the dispute.  Defs.' Brief ¶ 55.  However, the Arbitrator, Max Hittle, ruled that

"the AAA has jurisdiction and that the claims that arise under the Agreement are

arbitrable."  Id. ¶ 4.

On April 12, 2004, Prostyakov amended his Notice of Intent to Arbitrate and

added claims related to the allegedly incorrect and untimely Labor Book entry.  Masco

objected to these claims as being outside the scope of the Agreement, and raised a

counterclaim against Prostyakov based on his institution of Russian Court proceedings

against Masco, in violation of the Settlement Agreement provision regarding arbitration.

Id. ¶¶ 58-59.  Masco also filed another Motion to Dismiss, continuing to argue that the

---

[8] Masco emphasizes that the improper termination decision rendered by the Russian court
was based on Russian law.  Defs.' Objection at 4.

AAA lacked jurisdiction over the matter, and that it had not agreed to submit to arbitration on the Labor Book issues outside the Settlement Agreement.  Again, the Arbitrator denied Masco's motion.  Id. ¶ 60.

The arbitration occurred over four days in 2005.  Both parties were represented by counsel and introduced numerous witnesses and exhibits.  Pl.'s Response to Respondents' Verified Application to Vacate Arbitration Award and Reply to Respondents' Objection to Prostyakov's Motion to Confirm Arbitration Award [Docket No. 32] (hereinafter "Pl.'s Response") at 4.  On August 15, 2005, the Arbitrator issued an Arbitration Award in this dispute.  He ruled in favor of the claims brought by Prostyakov and in favor of the counterclaim brought by Masco.  In sum, the Arbitrator awarded $783,833.81 to Prostyakov for damages, attorney fees, and expenses, and awarded $62,521.85 to Masco for attorney fees in defending the Russian court action.  Award at 16.

Further, the Arbitrator stated that "Masco Corporation by its Chairman and Chief Executive Officer, Mr. Richard A. Manoogian, or his successor, is ordered to annul the Manoogian Directive of April 12, 1996 and issue an Executive Order, of current date, addressed and delivered to Prostyakov which acknowledges the termination of the employment and consulting relationships by mutual agreement between Prostyakov and Masco as of the date of such Executive Order."  Id. at 16-17.  The Arbitrator specified particular wording that the Executive Order was to contain.[9]

---

[9] Specifically, the Order was to state:

(continued...)

The Arbitration Award specified that the "sums awarded herein or actions ordered shall be paid or done within thirty (30) days of the transmittal of this award to the parties." Id. at 17.  Masco filed a Motion to Modify the award, which was denied by the Arbitrator.  Pl.'s Response at 4.  Thirty days after the issuance of the Award, neither the payment of the award nor the issuance of the Executive Order had occurred.  Therefore, on September 26, 2005, Prostyakov petitioned this Court to confirm the Arbitration Award.  Pet. at 4.  Defendants filed an Objection to Prostyakov's Petition on November 15, 2005, and requested that we vacate the Award [Docket No. 22].

<u>Legal Analysis</u>[10]

---

[9](...continued)
I, Richard A. Manoogian, Chairman of the Board of Directors and Chief Executive Officer of Masco Corporation ("Masco"), a Corporation organized pursuant to the laws of the State of Delaware, hereby notify Peter A. Prostyakov that on August __, 2005 the Board of Directors of Masco has annulled its decision of April 12, 1996 represented by my Directive addressed "To the Appropriate Officials of the Russian Republic"wherein Masco unilaterally removed Peter Alexandrovich Prostyakov, citizen of the Russian Federation (Passport #51 No. 1847120) as Managing Director and Agent of the Masco Representation Office; and further, that the Board of Directors of Masco hereby acknowledge and agree that Peter Alexandrovich Prostyakov is discharged as Managing Director and Agent of Masco Corporation in the Russian Federation this ___ day of August, 2005, pursuant to the Mutual Agreement of Peter A. Prostyakov and Masco Corporation.

Award at 17.

[10] In the course of pleading the issues in this case, Prostyakov filed a Surreply [Docket No. 39] to Respondents' Brief, without seeking prior permission from this court to do so.  Masco and Manoogian then filed a Motion to Strike the Surreply [Docket No. 40] pursuant to Local Rule 7.1.  Rule 7.1 "provides . . . guidance for briefing of motions in this court.  It does not allow for a surreply . . . A surreply may only be filed with prior permission of the court."  <u>C & Z Const. Inc. v. Pat Rican Inc.</u>, No. 1:04-CV-2047-JDT-TAB, 2005 WL 2099802, *1 (S.D. Ind.

(continued...)

I.     Standard of Review

       "Judicial review of arbitration awards is tightly limited; perhaps it ought not to be

called 'review' at all."   Baravati v. Josephthal, Lyon & Ross, Inc., 28 F.3d 704, 706 (7th

Cir. 1994).  Arbitration is intended primarily as a way to allow parties to select a

"nonjudicial forum" to work out disputes, and "we do not allow the disappointed party to

bring his dispute into court by the back door, arguing that he is entitled to appellate

review of the arbitrators' decision."   Id.  Accordingly, our power to review arbitration

awards is quite narrow.

       A federal court's power to vacate an arbitration award is governed by the Federal

Arbitration Act ("FAA").  The FAA provides a limited number of grounds upon which

courts may vacate arbitration awards, listed in 9 U.S.C.A. § 10(a).  That Subsection

provides, in relevant part:

> In any of the following cases the United States court in and for the district
> wherein the award was made may make an order vacating the award upon
> the application of any party to the arbitration –
>
> (1)     where the award was procured by corruption, fraud, or undue means;
> (2)     where there was evident partiality or corruption in the arbitrators, or
>          either of them;
> (3)     where the arbitrators were guilty of misconduct in refusing to

---

[10](...continued)
July 27, 2005.  See also Miami Valley Contractors, Inc. v. Town of Sunman, 960 F.Supp. 1366,
1370 (S.D. Ind. 1997) (Barker, C.J.) ("Seeking permission is not a mere technicality to be
overlooked or indulged by the Court.").  Accordingly, Respondents' Motion to Strike
Petitioner's Surreply is GRANTED.

      postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or

(4)     where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.[11]

Where none of the above grounds are present, a court is without power to vacate an Arbitrator's award.  An Arbitrator's error that does not rise to the level of one of the above four grounds does not merit vacatur of the award.  "Factual or legal errors by arbitrators – *even clear or gross errors* – do not authorize courts to annul awards." Gingiss International, Inc. v. Bormet, 58 F.3d 328, 333 (7th Cir. 1995) (emphasis added; internal citation omitted).  See also Northern Indiana Public Serv. Co. v. United Steelworkers of America, 243 F.3d 345 (7th Cir. 2001) ("All in all, as long as the arbitrator engaged in bone [sic] fide contractual interpretation, we are without power to vacate even if we believe the award was factually or legally incorrect".); Team Scandia, Inc. v. Greco, 6 F.Supp.2d 795, 801 (S.D. Ind. 1998) ("Whether the arbitrator misinterpreted the agreement is beyond the scope of our review.").

The Seventh Circuit recently explained this standard of review as such:

    When parties agree to arbitrate their disputes they opt out of the court system, and when one of them challenges the resulting arbitration award he perforce does so not on the ground that the arbitrators made a mistake but that they violated the agreement to arbitrate[.] . . . That is why in the typical arbitration, . . . the issue for the court is not whether the contract interpretation is incorrect or even wacky but whether the arbitrators *had failed to interpret the contract at all*, . . . for only then were they exceeding the authority granted to them by

_____

[11] 10 U.S.C.A. § 10(a).

12

the contract's arbitration clause.[12]

Some courts have also considered "manifest disregard of the law" to be a suitable non-statutory ground for vacatur of an award.  <u>See, e.g.</u>, <u>Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corp.</u>, 103 F.3d 9, 12 (2nd Cir. 1997).  However, our Circuit "ha[s] defined 'manifest disregard of the law' so narrowly that it fits comfortably under the first clause of the first statutory ground – 'where the arbitrators exceeded their powers.  For we have confined it to cases in which arbitrators 'direct the parties to violate the law.'" <u>Wise</u>, 450 F.3d at 268-69 (internal citations omitted).


II.     The Arbitration Award

Masco[13] contends that the Arbitration Award should be vacated under  9 U.S.C.A. § 10(a)(4) – that ground which provides for vacatur of an award when an arbitrator "exceed[s] [his or her] powers, or so imperfectly execute[s] them that a mutual, final, and definite award upon the subject matter submitted was not made."  Defs.' Objection at 1. Masco contends that the outcome of the arbitration "would have been completely different and Masco would have prevailed if the Arbitrator had properly limited the scope of the arbitration and applied the choice of law agreed to by the parties."  <u>Id.</u> at 2.

---

[12] <u>Wise v. Wachovia Securities</u>, 450 F.3d 265, 269 (7th Cir. 2006) (emphasis added).

[13] Masco and Manoogian are jointly represented by the same attorney in this matter, and all their filings on the Motion to Vacate have been joint.  Therefore, all references to the arguments of "Masco" should be understood to be arguments on behalf of Manoogian, as well.

Specifically, Masco identifies five ways by which, it argues, the Arbitrator exceeded his authority here.[14]  We shall identify and discuss each in turn.

### A.     Choice of Law

First, Masco argues, the Arbitrator exceeded his authority by applying Russian law in reaching his decision, rather than Indiana law.  As previously stated, the Settlement Agreement, by its terms, was "[to] be construed in accordance with the laws of the State of Indiana."  Agreement ¶ 5(i).

In the Arbitration Award, the Arbitrator recognized explicitly that "the Settlement Agreement is governed by Indiana law[.]"  Award ¶ 91.  However, he also stated that "the underlying Russian labor and employment issues arising out of the Settlement Agreement" were to be governed by Russian law.  In explaining this choice of law, the Arbitrator stated that "[i]n matters of contract interpretation, Indiana's conflict of law principles provide that the law of the forum with the most intimate contacts to the facts governs."  Id.  As authority for this principle, the Arbitrator cites 6 Indiana Law Encyclopedia, Contracts, § 120 Conflict of Laws.

Masco notes that the end of the cited chapter of the Indiana Law Encyclopedia contains the following warning:

---

[14] Masco actually breaks its arguments down into six sub-points.  However, because its second and third points of argument are substantially similar, we consolidate them into Subsection II.B below.

>   Caution: Recall that forum selection clauses are generally enforceable in
>   Indiana.  The most-intimate contacts test applies only when the parties have
>   not otherwise agreed as to the applicable law.

Masco contends that the Arbitrator "blatantly ignored" this caveat.  Pl.'s Reply
Brief in Support of Verified Application to Vacate Arbitration Award [Docket No. 35]
(hereinafter "Pl.'s Reply") at 6.  The Settlement Agreement contained an unambiguous
forum selection clause specifying that Indiana law should be applied, so the most-intimate
contacts test should not be applicable here.  Therefore, Masco argues that the Arbitrator's
choice of law "directly contravened the intentions of the parties as unequivocally stated in
the Agreement" and "effectively re-wrote the Agreement between the parties and applied
his choice of law rather than the choice of law of the parties."  Defs.' Objection at 11.  An
Arbitrator who disregards the parties' choice of law exceeds his authority under 9
U.S.C.A. § 10(a)(4).  See BEM I, LLC v. Anthropologie, 301 F.3d 548, 554 (7th Cir.
2002).

Prostyakov contends that, though the Arbitrator did conclude that the Settlement
Agreement was governed by Indiana law, as Masco points out above, he further
concluded in the same sentence that Russian law also has a place in the analysis.
Specifically, the Arbitrator states that: "[a]lthough the Settlement Agreement is governed
by Indiana law, *Russian law* determines the parties' rights and obligations under the
*Employment Agreement* as they relate to Russian labor law."  Award ¶ 91 (emphasis
added).  In the remainder of the paragraph, the Arbitrator discusses the intimate contacts
test and cites the Indiana Law Encyclopedia, as described above.  Therefore, Prostyakov

15

contends, there is no inconsistency in the Arbitrator's choice of law.  Pl.'s Response at 6-9.  He applied Indiana law to the terms of the Settlement Agreement, and Russian labor law to the terms of the underlying Employment Agreement.  Therefore, he did not exceed his authority in construing the Settlement Agreement, and the award should be confirmed.

We hold that the Arbitrator did not exceed his authority in applying the law as he did.  Masco's interpretation of Indiana law with regard to the enforceability of forum selection clauses *does* appear to us to be legally correct.  See, e.g., Dexter Axle Co. v. Baan USA, 833 N.E.2d 43, 48 (Ind. App. 2005)("forum selection provisions are enforceable" in the absence of fraud or overreaching); Allen v. Great American Reserve Ins. Co., 766 N.E.2d 1157, 1162 (Ind. 2002) ("Indiana choice of law doctrine favors contractual stipulations as to governing law.").  The Arbitrator appears to have applied an unusual amalgam of Indiana and Russian law: he applied Indiana law to the *Settlement Agreement*, but interpreted the *underlying* claims (which were part and parcel of the Settlement Agreement) according to Russian labor law.  Whether this was the legal result that we would have reached, were the dispute originally before us rather than the Arbitrator, is arguable – but, it is also irrelevant.  The question before us is whether the Arbitrator exceeded his authority in so doing – *not* whether his interpretation was legally accurate.

The Seventh Circuit's opinion in BEM I, LLC v. Anthropologie is particularly relevant and instructive here:

We should distinguish between two types of case in which an arbitral award might be challenged for disregarding the law. In one, although the arbitration clause directs the arbitrators to apply the law of a specified state, they decide they don't like that state's law, they like another state's law better and so they will apply that state's law. That would be a case in which the arbitrators had exceeded the authority granted them by the arbitration clause in the parties' contract, a ground for setting aside an arbitration award. . . . Contrast that with a case in which the arbitrators conscientiously attempt to apply [the correct state] law, pursuant to the choice of law provision in the contract, but fail to apply it correctly. The loser has no judicial remedy in that case because it is merely a case of legal error, not of *ultra vires*, and there is no judicial review of arbitration awards for legal error.[15]

In our view, the Arbitrator's choice of law in this case clearly falls within the latter category. There is no evidence that the Arbitrator "decide[d] [he didn't] like" Indiana law, and thus applied his amalgam of Russian law because he had some abstract preference for it. It appears to us that the Arbitrator conscientiously attempted to enforce the law accurately, taking into account the intentions of the parties as evidenced in the Agreement, and his obligations to follow, in good faith, the law of Indiana. We see no conscious disregard for his duties here – rather, in his detailed and reasoned Arbitration Award, he explained his choice, backed it with legal authority, and disclosed fully the mandates of the Agreement with respect to choice of law. The fact that his interpretation may ultimately have been faulty or misapplied is not our inquiry. See George Watts & Son, Inc. v. Tiffany and Co., 248 F.3d 577, 579 (7th Cir. 2001) ("A search for either simple or clear legal error cannot be proper. Courts often say, with respect to arbitrators' role in interpreting contracts, that error is not a ground of judicial review."). As in Wise,

---

[15] 301 F.3d 548, 554-55.

"the issue for the court is not whether the contract interpretation is incorrect or even wacky but whether the arbitrators *had failed to interpret the contract at all*."  450 F.3d at 269.  Here, the Arbitrator clearly interpreted the contract; thus, the Award must stand with respect to this ground.

### B.   *Arbitrability of Labor Book Issues*

Masco further argues that the Arbitrator exceeded his authority by deciding issues that did not arise from the Settlement Agreement, and to which the parties never agreed to arbitrate – specifically, the issues related to Prostyakov's Labor Book.

The Arbitration Award recognizes that "the Arbitrator's jurisdiction is necessarily limited to claims of breach of the Settlement Agreement" and that "[t]he parties [had] not agreed to arbitrate any other claims."  Award ¶ 14.  It further recognizes that "[t]here is no mention in the Settlement Agreement of Prostyakov's Labor Book or Masco's alleged termination of Prostyakov's employment on April 12, 1996."  Id. ¶ 34.  However, it also states that "[t]he only issues under consideration in this Arbitration are whether Prostyakov should receive compensation based upon Masco's alleged breach of the Agreement, *whether Prostyakov is entitled to any affirmative relief to correct an entry in his Labor Book*, and whether Masco should be compensated as a result of Prostyakov's alleged breach of the Agreement[.]"  Id. ¶ 14 (emphasis added).  Masco argues that, given the two foregoing findings of the Arbitrator, the inquiry into the Labor Book issue was

18

improper.[16]

Masco argues that it never agreed to arbitrate issues related to the Labor Book, and that these findings exceeded the Arbitrator's authority and substituted his judgment for the intentions of the parties, in violation of the FAA.  See AT&T Tech. v. Communications Workers of America, 475 U.S. 643, 648 (1986) ("[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.") (internal citation omitted).  Because the Agreement made no reference to the Labor Book, Masco contends that there is no way Masco could have breached the Agreement for actions regarding the Labor Book, so the Arbitrator's decision on this point exceeded his authority and imposed obligations on Masco which it had never contemplated as part of the Agreement.  Defs.' Brief at 22, 24. Masco claims that the Arbitrator failed to heed the parties' understanding that the Agreement "be read as broadly as possible such that Masco shall have no further obligations or liability of any sort or nature to Prostyakov."  Id. at 25; Agreement ¶ 3(a). Rather, he imposed obligations on Masco based on Russian law which he claimed were

---

[16] Masco also argues that the same inconsistency is evidenced in the Arbitrator's treatment of the timeline of events regarding the Agreement and the Labor Book.  The Arbitrator noted that "[t]he Settlement Agreement . . . had no application to events after June 18, 1996 [the date of the Agreement's execution]," Award ¶ 27 (emphasis in original), and that "[a]ny issue related to Masco's handling of Prostyakov's Labor Book arose after the execution of the Settlement Agreement" (Id. ¶ 71).  Masco also points to a string of testimony in which Prostyakov admits that the Labor Book and the Settlement Agreement are "completely separate" and should not be "tied together."  Defs.' Objection at 14.  Regardless, the Arbitrator found that Masco's entry in Prostyakov's Labor Book was "unlawful and retaliatory" and "in breach of the Settlement Agreement."  Award ¶¶ 73-74.

also breaches of the Agreement – but failed to specify or explain *how* Masco's actions breached the Agreement.  Masco claims that they could not have.  Defs.' Brief at 27.

Further, Masco notes that the deferential standard of judicial review typically applied to arbitration decisions is not directly applicable to the determination of whether a claim is arbitrable in the first place.  See Geneva Securities v. Johnson, 138 F.3d 688, 691 (7th Cir. 1998) ("[I]t is a longstanding principle that unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator.") (internal quotation omitted).  Therefore, it claims that the arbitration award must be vacated on this ground.

Prostyakov responds that the Labor Book issues were properly under consideration by the Arbitrator.  The Settlement Agreement, by its terms, applied to "all disputes, controversies or differences which may arise between the parties, out of, in relation to, or in connection with this Agreement or the breach thereof[.]"  greement ¶ 6.  Prostyakov argues that Masco "misses the point" when it states that the Labor Book was not properly an issue under consideration by the Arbitrator: "[i]t is not the Russian Labor Book that is the essence of the Arbitration, but rather the Respondents' breach of the Agreement and the disputes arising from the termination of the Prostyakov employment relationship with Masco that were arbitrated."  Pl.'s Response at 11.  In other words, Masco mischaracterizes the Labor Book issues as being the essence of the Arbitration Award; Prostyakov states that the essence of the Award was Masco's breach of the Settlement

Agreement, and the Labor Book issues were simply a part of this breach.  Further, there is

nothing to be made of the fact that the Labor Book was not mentioned in the Settlement

Agreement, and Masco's emphasis on this fact is misplaced.  Prostyakov asserts that "of

course" the Labor Book was not mentioned, because the disputed entry was made after

the Agreement was executed.  Id. at 12-13.

It is clear to us that the Labor Book issue related to the Settlement Agreement,

whether or not the words "Labor Book" specifically appeared therein.  Masco itself points

out the intended breadth of the Agreement.  By its terms, the Agreement states that "*[a]ll

disputes, controversies or differences which may arise between the parties, out of, in

relation to, or in connection with this Agreement or for the breach thereof*, which cannot

be settled by the parties themselves, shall be settled finally and bindingly by arbitration."

Agreement ¶ 6 (emphasis added).  The Settlement Agreement was intended to resolve all

loose ends regarding the failed employment relationship between the parties.  The Labor

Book issue was certainly such a loose end.  We reiterate our earlier statement that

whether we would have reached the same conclusions with respect to Masco's Labor

Book duties – that Masco had, and breached, obligations with respect to the Labor Book

entry – is an irrelevant inquiry.  What is relevant, and what we can easily decide, is that

the Agreement may be readily and fairly interpreted to encompass the Labor Book issues.

A sophisticated party like Masco should well have contemplated as much.  Thus, the

Arbitrator was within his authority to consider the Labor Book issues in his interpretation

of the Agreement.

C.      *Propriety of Relief Ordered by Arbitrator*

Masco further argues that the Arbitrator's order that Manoogian annul his previous Announcement (terminating Prostyakov) and issue a new Executive Order (stating that Prostyakov was being "discharged" by mutual agreement of the parties) was improper, exceeded the scope of his authority, and "essentially repudiate[d] the Agreement between the parties."  Defs.' Brief at 30.  The Arbitrator's Findings of Fact state (though in passing) that Prostyakov's employment was "terminated."  Award ¶ 39.  Further, Masco argues, the Agreement effectively ended any existing employment relationship between the parties.  Defs.' Objection at 19.  Therefore, Masco states, there is no dispute between the parties as to whether Prostyakov's employment was terminated, and the Arbitrator exceeded his authority by ordering relief that "effectively reinstates Prostyakov's employment with Masco" and "creates a false record of Prostyakov's employment."  Id. at 19-20.  Masco places great emphasis on the fact that the Russian court did not grant Prostyakov such relief in its own proceedings: "[t]he Arbitrator's retroactive reinstatement of Prostyakov is a stunning arrogation of power beyond any authority granted in the Agreement and all the more presumptuous in giving Prostyakov relief even a Russian Court would not authorize."  Id. at 20.  See Grand Rapids Die Casting Corp. v. Local Union No. 159, 684 F.2d 413 (6th Cir. 1982) (reversing confirmation of an arbitration award when the Arbitrator "set aside the discharge of an employee and substituted terms and discipline he felt were reasonable for the terms of the agreement").  Defs.' Brief at 30.  Masco characterizes the Arbitrator's ordered relief as based on "some thought,

22

feeling, policy, [or] law that is entirely extraneous to the Agreement" (see Northern

Indiana Pub. Serv. Co. v. United Steel Workers of America, 243 F.3d 345, 347 (7th Cir.

2001)).  Defs.' Objection at 21.

Prostyakov argues that the ordered relief does nothing to reinstate Prostyakov to

his position, and the Arbitration Award nowhere asserts that this is the intention of the

Arbitrator.  Rather, the relief simply "executes the [Settlement] Agreement" Pl.'s Reply at

14.  If Prostyakov were indeed being reinstated to employment with Masco, his monetary

damages would likely be far greater than they were (to compensate him for nine years of

forced unemployment).  Rather, "the Arbitrator is simply requiring the annulment of the

April 12, 1996 Manoogian Directive, which was annulled by the Agreement and is

ordering an Executive Order, of current date, consistent with the Agreement in order to

accurately represent the June 18, 1996 Agreement of the Parties."  Id. at 15.

An Arbitrator is generally free to order equitable relief within the bounds of

statutory or contractual limitations.  See, e.g., Miller Brewing Co. v. Brewery Workers

Local Union No. 9, 562 F.Supp. 1368 (D.C. Wis. 1983) (refusing to vacate an arbitration

award in which arbitrator had ordered union to recall temporary employees); AAA

Commercial Arbitration Rule 45(a) ("[t]he arbitrator may grant any remedy of relief that

the arbitrator deems just and equitable and within the scope of the agreement of the

parties").  As we have repeatedly stated, we need not consider whether we would have

chosen the equitable remedy selected by the Arbitrator.  Rather, as above, we need only

consider whether it was within his ambit to do so.  In our view, it was.

Though Masco does not say as much, its protestations that the Arbitrator's order would "create a false record" appear to be based on an argument that enforcement of such an award would be against public policy interests.  These concerns arise with some frequency when courts enforce arbitration awards that reinstate employees who have been discharged.  However, courts generally will refuse to vacate awards based on generalized and imprecise concerns about public policy.  See United Paperworkers International Union v. Misco, 484 U.S. 29, 44 (1987) (refusing to vacate an arbitration award based only on "general considerations of supposed public interests," when the award reinstated a drug-using employee).  Even in cases such as this one, in which Prostyakov was discharged for alleged theft, courts have frequently confirmed awards reinstating such employees.  See, e.g., American Postal Workers Union v. United States Postal Serv., 789 F.2d 1 (D.C. Cir. 1986); United States Postal Serv. v. American Postal Workers Union, 735 F.2d 822 (1st Cir. 1984).  We should also note that we are not convinced that the Arbitrator's order actually serves to "reinstate" Prostyakov.  Even if his employment is not "terminated," he is still "discharged" by the language of the Arbitrator's proposed Order.  This seems to us well within the bounds of what the Arbitrator may permissibly require in equity.  Therefore, we will not vacate the Award on these grounds.

### D.    Propriety of Ordering a Nonparty to Render Relief

Masco maintains that "[t]he Arbitrator exceeded his power by ordering Mr.

24

Manoogian, a nonparty to the Arbitration proceedings, to give Prostyakov relief.  Because

Mr. Manoogian was not a party to or even a participant in the arbitration proceedings, the

Arbitrator had no authority to order Mr. Manoogian to take any action regarding

Prostyakov's claims."  Defs.' Objection at 21.  Prostyakov responds that it would be

"impractical and unwieldy" for the Arbitrator to have "fashion[ed] his remedy by an order

to the Board of Directors."  Pl.'s Response at 15.

We do not take issue with the way the Arbitrator formulated the ordered relief.

Both sides give short shrift to the fact that Mr. Manoogian is *not* specifically ordered to

render relief.  Rather, the Award states that "*Masco Corporation by its Chairman and

Chief Executive Officer, Mr. Richard A. Manoogian, or his successor*, is ordered to"

annul the previous order and issue a new one.  Award ¶ 6 (emphasis added).  In addition,

*Masco* is required to provide Prostyakov with a Russian translation of the new order.  Mr.

Manoogian was CEO of Masco at the time of the issuance of the Arbitration Award, and

provided that he so remains, he will effectively be required to take action in order to

render the ordered relief to Prostyakov.  However, he does so not in his capacity as

Richard A. Manoogian; he does so in his capacity as CEO of Masco Corporation.  Masco,

of course, *was* party to the Settlement Agreement, and it is thus proper to order relief

from it.  The Arbitrator's Award merely specifies the method by which the *corporation*

must render relief.  This method does not exceed his authority, and the Award will not be

vacated on these grounds.

E.    *Arbitrator's Exercise of Jurisdiction over the Dispute*

As previously stated, paragraph 6 of the Agreement provided that disputes regarding it were to be privately arbitrated, in Indianapolis, by an attorney chosen mutually by the parties.  Though the rules of the AAA were to apply, the AAA was not specifically to have jurisdiction over the dispute.  If the parties could not select a mutually acceptable arbitrator, the Agreement provided that each party should select its own arbitrator, and those arbitrators would select a third neutral arbitrator, who would alone arbitrate the dispute.

Masco argues that Prostyakov "improperly filed his petition with the AAA" and that the AAA exercised jurisdiction over the objections of Masco.  Defs.' Objection at 22. Masco states that it "participated in the AAA process to choose an Arbitrator from the AAA's designated list of Arbitrators" rather than default from the proceedings.  Id. at 23. The FAA provides that "[i]f in [a settlement agreement] provision be made for a method of naming or appointing an arbitrator . . . such method shall be followed."  9 U.S.C.A. §5. Because Masco claims that the designated procedure was not so followed, it argues for vacatur of the award.

Prostyakov claims that the terms of the Agreement's clause were followed.  He claims that "each selected an arbitrator who in turn selected the sole arbitrator to hear this dispute."  Pl.'s Response at 4.  Masco brought its jurisdictional complaints in front of the

AAA, and the arbitrator ruled that he *did* have jurisdiction over the dispute.  See Pl.'s

Brief in Support of Petition to Confirm Arbitration Award and Response to Respondents'

Verified Application to Vacate Arbitration Award [Docket No. 33], Ex. A, Ruling on

Jurisdiction.  The Arbitration Award states that "Arbitrator Max W. Hittle, Jr. was

selected to hear this matter by Arbitrators The Hon. Susan Getzendanner and John

Trimble, Esq."  Award ¶ 66.  Prostyakov states that Getzendanner was appointed by

Prostyakov, and Trimble was appointed by Masco; therefore, this procedure meets the

requirements of "private" arbitration set forth by the parties in the Agreement.  Pl.'s

Response at 16-17.

It appears to us that the procedure specified in the Agreement was followed in

selecting an Arbitrator in this dispute.  It is true that the Arbitrator eventually selected *was*

affiliated with the AAA, but this does not necessarily imply that the procedure required

by the Agreement was not followed.  Pursuant to AAA Commercial Arbitration Rule 7(a)

(which the parties agreed would govern their dispute), the Arbitrator "ha[d] the power to

rule on his . . . own jurisdiction, including any objections with respect to the existence,

scope or validity of the arbitration agreement."  He did so in his ruling on jurisdiction.

The Arbitrator explicitly recognized in his ruling that the parties had, in their agreement,

varied the procedure for selecting an arbitrator, and that "the parties *have done so* in the

selection of the undersigned arbitrator" (emphasis added).  We see no reason why the

jurisdiction of the AAA and the procedure specified for the parties for Arbitrator selection

must be mutually exclusive.  Because we conclude that the procedure was not violated

and the Arbitrator did not exceed his authority in exercising jurisdiction over the dispute, we will not vacate the Award on jurisdictional grounds.

Because none of Masco's stated reasons for vacating the Arbitration Award meet the narrow statutory requirements for vacatur of an Award, we hereby DENY Defendants' Verified Application to Vacate Arbitration Award, and GRANT Plaintiff's Motion to Confirm Arbitration Award.[17]

III.     Dismissal of Mr. Manoogian as a Party

In addition, Masco and Mr. Manoogian move the Court to dismiss Manoogian – Masco's CEO and Chairman of its Board of Directors – as an improperly named party in this action.  Defs.' Motion to Dismiss Manoogian [Docket No. 20] at 1.  In support of this motion, they point out that Manoogian was not party to the arbitration between Prostyakov and Masco, and did not participate in the arbitration proceedings at all.  He was also not a party to the Settlement Agreement that provided for an arbitrable dispute.

---

[17] In Prostyakov's Response, he seeks post-arbitration attorney fees in addition to confirmation of the Award.  As authority for his request, he cites a provision in the parties' Settlement Agreement which provides that in case of breach, "the breaching party will indemnify and hold the other harmless from any and all resulting claims, including attorney's fees and costs."  Award ¶ 5(c).  However, as Masco correctly states, we are "powerless to receive evidence concerning attorneys' fees" as "there is nothing in the Federal Arbitration Act . . . that would authorize a district court to go beyond confirming an arbitrators' award and independently award additional attorneys' fees."  Menke v. Monchecourt, 17 F.3d 1007, 1009 (7th Cir. 1994).  Because we are not empowered by the FAA to do so, we clearly must deny Prostyakov's request.

However, Prostyakov's Petition to Confirm the Arbitration Award names Manoogian as a party to the proceeding at bar.

Masco and Manoogian argue that Manoogian "is not a person indispensable or necessary to the fulfillment of any relief," and that "Masco is the only party necessary to provide relief, which it may accomplish through its employees, officers and agents." Id. at 2. Further, they claim, the Court lacks personal jurisdiction over Manoogian. Id. In addition, they argue that Prostyakov has waived any argument for joinder of Manoogian under Fed. R. Civ. P. 19, and should be estopped from making such an argument now. "Rule 19 is a procedural mechanism for joinder of non-parties *before* a proceeding progresses to an adjudication on the merits, not a shortcut to enforce a remedy against a person who never had an opportunity to participate in the proceeding." Defs.' Reply re: Manoogian [Docket No. 34] ¶ 11.

Prostyakov argues that the Arbitrator "[l]ogically . . . determined that the person actually signing the Executive Order should be of equal stature to the person executing the 1996 Executive Order." Pl.'s Response re: Manoogian [Docket No. 30] ¶ 5. Prostyakov states that "the equitable remedy fashioned by the Arbitrator is specific to Chairman Manoogian," id. ¶ 7, so Prostyakov named Manoogian in his Petition in order "to enable this Court to confirm and enforce the specific equitable remedy ordered by the Arbitrator." Id. ¶ 8. Further, regarding personal jurisdiction, Prostyakov claims that "Mr. Manoogian or the person serving as 'Chairman and Chief Executive Officer' is a person subject to service of process as required by F.R.C.P [sic] 19, and he or his successor is a

29

person in whose absence complete relief cannot be accorded among those already parties." Id. ¶ 9.

Joinder under Rule 19 is only appropriate if, without it, "complete relief cannot be accorded among those already parties." Fed. R. Civ. P. 19(a)(1). We do not find that to be the case here. As previously explained in Subsection II.D, Manoogian is involved in this dispute solely in his capacity as current CEO and Chairman of Masco – not in his individual capacity. He never participated, in an individual capacity, in the Settlement Agreement or any of the Arbitration proceedings. The Executive Order that the Arbitrator mandates is to be issued by *Masco*, *by* Manoogian *or* his successor. The Arbitrator could just have easily have ordered Masco "by its CEO" to have issued the order. The fact that Manoogian's name is specifically used does not in itself involve him in his individual capacity. Therefore, we hold that joinder of Manoogian at this point in the proceedings is not well-founded, and we hereby GRANT Defendants' Motion to Dismiss Manoogian as an Improperly Named Party.

IT IS SO ORDERED.

Date:    September 29, 2006

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Copies to:

Brian Edward Bailey
ICE MILLER LLP
brian.bailey@icemiller.com

Stephen Edwards Plopper
STEPHEN PLOPPER & ASSOCIATES
splopper@sploplaw.com

Michael A. Wukmer
ICE MILLER LLP
michael.wukmer@icemiller.com